# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 21, 2010          Decided October 29, 2010

No. 09-5365

RANDY HARDIN AND VERNON BLASINGAME,
APPELLANTS

v.

LISA PEREZ JACKSON, ADMINISTRATOR, UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY,
AND BASF CORPORATION,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cv-01299)

*Gabrielle H. Kickham* argued the cause for the appellants. *James B. Dougherty*, *James D. MacIntyre* and *William J. French* were on brief.

*Robert H. Oakley*, Attorney, U.S. Department of Justice, argued the cause for the federal appellee. *Robert G. Dreher*, Principal Deputy Assistant Attorney General, and *Lisa E. Jones* and *Angeline Purdy*, Attorneys, were on brief. *Robert P. Stockman*, Attorney, entered an appearance.

*James B. Slaughter* argued the cause for appellee BASF Corporation. *Kathryn E. Szmuszkovicz* and *Sarah S. Doverspike* were on brief.

Before: HENDERSON, BROWN and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The appellants, two Arkansas tomato farmers, brought this action seeking declaratory and injunctive relief to require appellee Lisa Perez Jackson, Administrator of the Environmental Protection Agency, (EPA) to cancel the registration of "Facet" pesticides that appellee BASF Corporation (BASF) has manufactured and distributed to rice farmers for weed control. The appellants claim that Facet has been drifting over and damaging their tomato crops since 1992 when EPA registered the first Facet pesticide, Facet 50 WP (Facet 50), under subsections 3(c)(7)(A) and (B) of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136a(c)(7)(A), (B). They further assert the 1992 registration was procedurally defective because EPA should have registered Facet 50 under subsection 3(c)(7)(C), which requires that EPA make findings regarding the pesticide's safety and the public interest, findings that EPA did not make. The district court dismissed the action for lack of subject-matter jurisdiction on the ground the appellants did not file the complaint until 2004, which was beyond the six-year limitation period prescribed in 28 U.S.C. § 2401(a).[1] *Hardin v. Jackson*, 648 F. Supp. 2d 42 (D.D.C. 2009). We agree with the district court that the action is time-barred and affirm the dismissal.

---

[1]As we observed in *P & V Enterprises v. U.S. Army Corps of Engineers,* 516 F.3d 1021 (D.C. Cir. 2008), we have "long held that section 2401(a) creates 'a jurisdictional condition attached to the government's waiver of sovereign immunity.' " 516 F.3d at 1026 (quoting *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987) (citations omitted)).

**I.**

Section 3(a) of FIFRA prohibits the distribution or sale of a pesticide that EPA has not registered thereunder. 7 U.S.C. § 136a(a).[2] Under FIFRA, the registration is either unconditional, *id*. § 136a(c)(5), or conditional, *id*. § 136a(c)(7). A conditional registration—conditioned on submission of additional data—is authorized under three circumstances. First, EPA may conditionally register a pesticide if "the pesticide and proposed use are identical or substantially similar to any currently registered pesticide and use thereof, or differ only in ways that would not significantly increase the risk of unreasonable adverse effects on the environment," *id*. § 136a(c)(7)(A); second, EPA may conditionally amend a pesticide's registration "to permit additional uses of such pesticide," *id*. § 136a(c)(7)(B); and third, EPA may conditionally register a pesticide "containing an active ingredient not contained in any currently registered pesticide for a period reasonably sufficient for the generation and submission of required data" but "only if [EPA] determines that use of the pesticide during such period will not cause any unreasonable adverse effect on the environment, and that use of the pesticide is in the public interest," *id*. § 136a(c)(7)(C).

In January 1992, BASF submitted an application for conditional registration of Facet 50, which contained the active ingredient quinclorac, an effective weed control pesticide for rice crops. On October 13, 1992, EPA notified BASF that it had conditionally registered Facet 50 under subsections 3(c)(7)(A) and 3(c)(7)(B). Along with the notice, EPA sent BASF a label

---

[2]FIFRA defines "pesticide" as "(1) any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest, (2) any substance or mixture of substances intended for use as a plant regulator, defoliant, or desiccant, and (3) any nitrogen stabilizer." 7 U.S.C. § 136(u).

which was required to be affixed to the distributed product and which displayed, inter alia, the fact and date of registration and the registration number. In September 1994 and April 1998, EPA registered two additional quinclorac products, Facet 75 DF (Facet 75) and Facet GR, each under subsection 136a(c)(7)(A) as each was "substantially similar to [a] currently registered pesticide," namely, Facet 50.

Beginning in March 1995, the appellants filed multiple civil actions in Arkansas state court against Facet applicators, alleging that "drift" from the sprayed Facet was damaging their tomato crops. *See Hardin*, 648 F. Supp. 2d at 47. On June 26, 2000, the appellants (along with other Arkansas tomato farmers) filed a class action against BASF in the Eastern District of Arkansas, alleging their tomato crops had been damaged by "uncontrolled and uncontrollable drift, migration or other dispersal of Facet." Complaint ¶ 41, *Hardin v. BASF Corp*, 4:00-cv-00500 (E.D. Ark. June 26, 2000). The district court granted summary judgment to BASF on the ground the action was expressly preempted by FIFRA, *Hardin v. BASF Corp.,* 290 F. Supp. 2d 964, 967 (E.D. Ark. 2003), but on appeal the Eighth Circuit remanded, *Hardin v. BASF Corp.*, No. 03-3624 (8th Cir. June 29, 2005). On remand the parties settled. Order of Dismissal Pursuant to Settlement, *Hardin v. BASF Corp*, 4:00-cv-00500 (E.D. Ark. Nov. 16, 2006).

In September 2003, the appellants filed an administrative petition with EPA to revoke or to suspend and cancel all of EPA's registrations of Facet pesticides. The petition alleged that BASF "fraudulently withheld or misrepresented material facts" regarding its FACET products and that EPA conditionally registered Facet "without making the findings required by law for such a registration and contrary to the statutory terms which preclude a conditional registration for a revolutionary product such as Facet." Petition to Revoke or to Suspend and Cancel EPA Registrations for Facet® Herbicides, *Hardin v. BASF*, at

72, *reprinted at* JA 210. While the administrative petition was pending, the appellants filed this action against EPA on August 3, 2004.

The complaint asserts three causes of action, one each under FIFRA, the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* All three claims are based on EPA's conditional registration of Facet 50 in 1992. The complaint alleges in particular that EPA violated FIFRA's procedural requirements by (1) conditionally registering Facet 50 under section 3(c)(7)(A) and (B) "in the face of BASF's failure to meet the criteria for conditional registration" and (2) failing to obtain data or to make or publish in the Federal Register factual determinations as required under section 3(c)(7)(C). Complaint at 18, *Hardin v. Leavitt*, C.A. No. 04-01299 (Aug. 3, 2004). According to the appellants, because EPA had not previously registered a quinclorac pesticide, Facet 50 was ineligible both for registration under subsection 3(c)(7)(A) (as "identical or substantially similar to a[] currently registered pesticide") and for amended registration under subsection 3(c)(7)(B) ("to permit additional uses")—the subsections identified in the Facet 50 registration notice. Instead, because Facet 50 "contain[ed] an active ingredient not contained in any [then] registered pesticide," 7 U.S.C. §136a(c)(7)(C), the appellants maintain the product was eligible only for conditional registration under section 3(c)(7)(C), which requires that EPA affirmatively determine that the registered pesticide "will not cause any unreasonable adverse effect on the environment, and that use of the pesticide is in the public interest," 7 U.S.C. § 136a(c)(7)(C), findings that EPA did not make.[3] The appellants further assert that EPA's later derivative

---

[3]EPA also failed to publish, as required, a pre-registration notice of application (to be followed by a comment period) or a post-

registrations of Facet 75 and Facet GR under section 3(c)(7)(A) (as "identical or substantially similar to" Facet 50) were consequently defective as well. Based on these procedural defects, the complaint requests (1) a declaration that BASF's three Facet products "were not properly and validly registered" and that their registrations are therefore "null and void," (2) an order requiring EPA to "cancel any and all purported registrations of any BASF Quinclorac-based product, including but not limited to Facet 50 WP and Facet 75 DF," to remove quinclorac-based products from the market and to refrain from "the further distribution or sale of such products within the United States" and (3) an award of costs, including attorney's fees. Complaint at 20-21, *Hardin v. Leavitt*, C.A. No. 04-01299.

EPA moved to dismiss the complaint on the ground it was filed outside the statutory limitation period (and for summary judgment on other grounds). On July 27, 2005, the district court denied EPA's motion without prejudice "[i]n light of plaintiffs' pending administrative petition that, if granted, could render the instant case moot" and removed the case from the calendar "pending the outcome of the on-going administrative action." Minute Order, *Hardin v. Leavitt*, C.A. No. 04-01299 (July 27, 2005). The court further directed the parties to file a joint status report every 90 days.

On August 14, 2007, the district court held a status hearing at which it directed the parties to commence filing monthly status reports and scheduled another status hearing for January 2008. In each of three consecutive monthly reports—filed in October, November and December 2007—EPA informed the court that it anticipated taking final administrative action no later than December 31, 2007. When no final action had been

registration notice of issuance. *See* 40 C.F.R. § 152.102; 7 U.S.C. § 136a(c)(4).

taken by the time of the January 8, 2008 status hearing, the court returned the case to the active docket and directed EPA to file an answer. In March 2009, BASF intervened as a defendant. On August 27, 2009 the court dismissed the complaint for failure to commence the suit within six years after the appellants' right of action accrued pursuant to 28 U.S.C. § 2401(a). The appellants filed a timely notice of appeal.

## II.

The district court correctly concluded that the applicable statute of limitations is 28 U.S.C. § 2401(a), which provides:

> Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

Under this statute, a party challenging final agency action must commence his suit within six years after the right of action accrues and the "right of action first accrues on the date of the final agency action." *Harris v. FAA*, 353 F.3d 1006, 1009-10 (D.C. Cir. 2004); *see also Felter v. Kempthorne*, 473 F.3d 1255, 1259 (D.C. Cir. 2007) ("Actions usually accrue 'when [they] come[ ] into existence.' " (quoting *United States v. Lindsay*, 346 U.S. 568, 569 (1954))). Thus, ordinarily, the appellants' right of action accrued on October 13, 1992 when EPA conditionally registered Facet 50 and the six-year limitation period began to run on that day. In this case, however, the appellants insist their right of action accrued much later because of the "discovery rule."

Under the discovery rule, "a cause of action accrues when the injured party discovers—or in the exercise of due diligence

should have discovered—that it has been injured." *Nat'l Treasury Emps. Union v. FLRA*, 392 F.3d 498, 501 (D.C. Cir. 2004) (internal quotation omitted). The appellants contend that, under the rule, their right of action did not accrue until they discovered their procedural injuries, which did not occur until at least July 2000 when BASF raised its preemption defense in the Arkansas class action and thereby put them on notice that the Facet products had been registered under FIFRA.[4] Thus, they maintain, their August 3, 2004 complaint in this action was timely filed. Appellants' Br. 15; *see also* Pls.' Combined Reply in Supp. of Their Mot. For Summ. J. & Resp. in Opp'n. to EPA's Mot. for Summ. J. at 8-9, *Hardin v. Johnson,* C.A. No. 04-1299 (filed Oct. 27, 2008). The appellees respond that the discovery rule does not apply to an action subject to section 2401(a)'s limitation period, which must be construed strictly in favor of the government, or to a claim of procedural error, for which applicable precedent directs that the limitation period begins to run upon final agency action. We conclude, as did the district court, that, even assuming the discovery rule applies here—an issue we do not decide—the appellants' action was filed out of time.

Exercising "due diligence," the appellants or their counsel should have discovered that EPA had registered the Facet products long before BASF raised its preemption defense in July

---

[4]"To establish injury-in-fact in a 'procedural injury' case, petitioners must show that 'the government act performed without the procedure in question will cause a distinct risk to a particularized interest of the plaintiff.' " *City of Dania Beach, Fla. v. FAA*, 485 F.3d 1181, 1185 (D.C. Cir. 2007) (quoting *Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996) (en banc)). The appellants have met this standing threshold because EPA's alleged failure to determine that Facet 50 "will not cause any unreasonable adverse effect on the environment" has caused a "distinct risk" to their "particularized interest" in a healthy tomato crop. *See* 7 U.S.C. § 136a(c)(7)(C).

2000. It is undisputed that in 1995 the appellants filed suit against Facet 50 applicators in Arkansas state court. *See* BASF's Mem. of Points & Auths. in Supp. of Mot. to Dismiss, or, in the Alternative, for Summ. J., & in Opp'n to Pls.' Mot. for Summ. J. at 2 n.1, *Hardin v. Johnson*, C.A. No. 04-1299 (D.D.C. filed Mar. 3, 2009); Appellants' Br. 18 (acknowledging state court actions involving "claims for negligence asserted against neighbors and aerial applicators for misapplication of Facet") (emphasis omitted); Complaint, *Blasingame v. Carwell Elevator Co.*, No. CIV 95-034 (Poinsett County, Ark. Cir. Ct. filed Mar. 3, 1995) (appended to BASF's Brief at add. doc. 2B) (*Carwell* Compl.). That Facet 50 was registered was obvious from the registration notice appearing on the label of Facet 50—a label with which they plainly should have been familiar inasmuch as Facet 50 was the product *sub judice*. *See* Parties' Stipulation of Facts and Exs., *Hardin v. Johnson*, C.A. No. 04-1299, Ex. 177 at 3 (July 10, 2008) (Facet 50 label);[5] *Carwell* Compl. ¶ 4 (alleging Carwell "failed to follow the restrictions *on the labels* of the herbicides it was spraying") (emphasis added). As early as 1995, therefore, the appellants were on notice of Facet 50's registration and could have requested registration documentation from EPA that would have revealed Facet 50 had been

---

[5]The Facet 50 label registration notice reads:

ACCEPTED

October 13, 1992

Under the Federal Insecticide,
Fungicide, and Rodenticide Act,
as amended, for the pesticide
registered under
EPA Reg. No. 7969-93

Ex. 177 at 3.

conditionally registered, albeit incorrectly,[6] under subsections 3(c)(7)(A) and 3(c)(7)(B), for which the appellants claim it was ineligible.

The appellants argue the state court suits are immaterial because they asserted that Facet 50 was "misappli[ed]," not that it was "defective" or "improperly registered." Appellants' Br. 18. We find this argument unpersuasive. The complaint in *Carwell* expressly characterizes Facet 50 as "*inherently* dangerous,*" Carwell* Compl. ¶ 4 (emphasis added), apparently without regard to how it is applied. In any event, the Arkansas district court (in language the appellants themselves cite, Appellants' Br. 18) observed that within "a few years" after "Facet appeared on the market" and the appellants "began suffering significant crop losses"—that is, a few years after 1992—state investigators, local cooperative extension service personnel and University of Arkansas experts "reached a consensus that quinclorac, the active ingredient in Facet, was damaging [the Appellants'] tomatoes." 290 F. Supp. 2d at 968-69. The appellants give no explanation for their failure to investigate the legality of quinclorac's distribution at that time. For the same reason, we reject the appellants' argument that "it was not until 1999, when University of Arkansas professors undertook a special study of off-target Facet drift, that Plaintiffs had sufficient evidence to bring their products liability action against BASF." Appellants' Br. 18-19 (citing 290 F. Supp. 2d at 969). The appellants believed Facet to be "inherently dangerous" to their crops as early as 1995; they could have investigated the product's FIFRA registration as soon as they were put on notice of it—that is, *via* the Facet 50 label

---

[6]As the appellants argue and the district court concluded, EPA could not lawfully register Facet 50 under section 3(c)(7)(A) or (B) because EPA had not previously registered any quinclorac-based pesticide. *See supra* p. 5; *Hardin*, 648 F. Supp. 2d at 44 n.4.

displaying the FIFRA registration number—and filed a timely lawsuit based on the results thereof. They had no reason to wait. *See Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("[I]n applying a discovery accrual rule, [the Court] ha[s] been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock."); *United States v. Kubrick*, 444 U.S. 111, 123 (1979) (plaintiff "armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government.").

Because the appellants knew or should have known of their injuries no later than 1995 when they filed their state lawsuits, we conclude that, even under the discovery rule, the statutory limitation period began to run more than six years before they filed their complaint in this action on August 3, 2004. Accordingly we affirm the district court's dismissal of the suit as time-barred under 28 U.S.C. § 2401(a).

*So ordered*.