# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 10, 2013   Decided June 17, 2014

No. 12-1305

ALLIANCE FOR SAFE, EFFICIENT AND COMPETITIVE TRUCK
TRANSPORTATION, ET AL.,
PETITIONERS

v.

FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION AND
ANTHONY FOXX, IN HIS OFFICIAL CAPACITY AS SECRETARY OF
TRANSPORTATION,
RESPONDENTS

On Petition for Review of an Action of the
Federal Motor Carrier Safety Administration

*David E. Frulla* argued the cause for petitioners. With him
on the briefs were *Shaun M. Gehan*, *Henry E. Seaton*, and *Mark
J. Andrews*.

*Gerald K. Gimmel* was on the brief for *amicus curiae*
National Confectioners' Logistics Council, Inc. in support of
petitioners.

*Edward J. Kiley* was on the brief for *amicus curiae*
Airforwarders Association in support of petitioners.

*Jeffrey A. Clair*, Attorney, U.S. Department of Justice,

argued the cause for respondents. With him on the brief were *Stuart F. Delery*, Principal Deputy Assistant Attorney General, and *Matthew M. Collette*, Attorney. *Paul M. Geier*, Assistant General Counsel, U.S. Department of Transportation, *Peter J. Plocki*, Deputy Assistant General Counsel, and *Joy Park*, Trial Attorney, entered appearances.

Before: GARLAND, *Chief Judge*, ROGERS, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*:  The petitioners in this case are trucking companies, transportation intermediaries, and trade associations composed of such firms. They seek review of PowerPoint presentations that the Federal Motor Carrier Safety Administration posted on its website on May 16, 2012. The petitioners maintain that the PowerPoint presentations represent an "astonishing" change in agency policy, which the agency failed to subject to notice-and-comment rulemaking as required by the Administrative Procedure Act.

We are not astonished. In our view -- and the agency's -- the PowerPoint presentations do nothing more than explain the agency's Safety Measurement System. Because that System was announced and implemented in 2010, the petitioners' present effort to challenge it comes too late. Under the Hobbs Act, upon which this court's jurisdiction depends, challenges to agency rules, regulations, or final orders must be brought within 60 days of their issuance. *See* 28 U.S.C. § 2344. Because that deadline had passed long before the petitioners filed their petition for review, we dismiss the petition as untimely.

I

Federal law instructs the Secretary of Transportation to make "safety fitness determinations" for commercial motor carriers and to make those determinations "readily available to the public." 49 U.S.C. § 31144(a). In response, the Secretary has promulgated regulations establishing procedures and standards for evaluating the "safety fitness" of commercial motor vehicle operators and owners. *See* 49 C.F.R. Part 385. After an on-site inspection, a motor carrier receives a safety fitness rating based on such factors as the adequacy of safety management controls, the frequency and severity of regulatory violations, and other considerations. *See* 49 C.F.R. §§ 385.7, 385.9.

In 2000, the Secretary delegated responsibility for administering the safety fitness rating system to the Federal Motor Carrier Safety Administration (FMCSA), an agency within the Department of Transportation. *See* 49 U.S.C. § 322; 49 C.F.R. § 1.86. FMCSA also became responsible for administering a database that contains in-depth information about driver conduct and qualifications, vehicle maintenance and inspection, crashes, and safety management systems and procedures. That database, which the agency developed in the mid-1990s to help it select motor carriers for on-site inspections, became available to the public on the agency's website in 1999, under the name SafeStat. *See* Withdrawal of Proposed Improvements to SafeStat and Implementation of CSMS, 75 Fed. Reg. 18,256, 18,257-58 (Apr. 9, 2010). It is one of three relevant databases operated by FMCSA. The other two are the Safety and Fitness Electronic Records database (SAFER), which contains carriers' safety fitness ratings, and the Licensing and Insurance database (L&I), which provides information about the insurance and operating-authority status of carriers.

On April 9, 2010, FMCSA announced that it would replace SafeStat with a more comprehensive Safety Measurement System (SMS) and solicited comments. The announcement of the change was made in a Federal Register notice, which stated:

> FMCSA announces that it will replace its Motor Carrier Safety Status Measurement System (SafeStat) with an improved Carrier Safety Measurement System ([]SMS) on November 30, 2010. . . . SafeStat is an automated algorithm currently used by FMCSA to identify high-risk and other motor carriers for on-site compliance reviews. By implementing the new []SMS algorithm, FMCSA will be able to better identify high-risk motor carriers, make more efficient and effective the Agency's and its State partners' allocation of compliance and enforcement resources[,] and provide the motor carrier industry and other safety stakeholders with more comprehensive, informative, and regularly updated safety performance data.

*Id.* at 18,256. Compared to its predecessor SafeStat, the Safety Measurement System draws on a wider range of safety data, including expanded law-enforcement data regarding citations, warnings, and roadside inspections. *Id.* at 18,258. The data is used to assign safety scores to individual carriers. *See id.* at 18,256-58. Safety Measurement System data does not, however, affect carriers' safety fitness ratings under 49 U.S.C. § 31144. *See* 75 Fed. Reg. at 18,257 (noting that FMCSA would "continue to issue safety ratings in accordance with 49 CFR part 385-Safety Fitness Procedures").

In December 2010, FMCSA proceeded with implementation of the system. Shortly before that, three of the petitioners in this case -- the National Association of Small Trucking Companies, the Expedite Association of North

America, and the Air & Expedited Motor Carriers Association -- filed a petition in this court, seeking review of the Safety Measurement System and an emergency stay of its implementation. The petitioners alleged that the system should be set aside because it amounted to "a new model for compelling compliance and determining the safety fitness of motor carriers," and because "FMCSA ha[d] not provided adequate notice and opportunity for comment," as required by the Administrative Procedure Act, 5 U.S.C. § 553. Motion for Emergency Stay at 11, 13, *Nat'l Ass'n of Small Trucking Cos. v. FMCSA*, No. 10-1402 (D.C. Cir. Nov. 29, 2010). After the court denied the petitioners' motion for a stay, the parties reached a settlement, and the court granted the petitioners' motion to dismiss the petition. *See* Order, *Nat'l Ass'n of Small Trucking Cos. v. FMCSA*, No. 10-1402 (D.C. Cir. Mar. 10, 2011).

Under the settlement agreement, FMCSA agreed to add the following disclaimer to its website:

---

**USE OF SMS DATA/INFORMATION**

The data in the Safety Measurement System (SMS) is performance data used by the Agency and Enforcement Community. A △ symbol, based on that data, indicates that FMCSA may prioritize a motor carrier for further monitoring.

The △ symbol is not intended to imply any federal safety rating of the carrier pursuant to 49 USC 31144. Readers should not draw conclusions about a carrier's overall safety condition simply based on the data displayed in this system. Unless a motor carrier in the SMS has received an UNSATISFACTORY safety rating pursuant to 49 CFR Part 385, or has otherwise been ordered to discontinue operations by the FMCSA, it is authorized to operate on the nation's roadways.

Motor carrier safety ratings are available at http://safer.fmcsa.dot.gov and motor carrier licensing and insurance status are available at http://li-public.fmscsa.dot.gov/

---

Pet'rs' Addendum 3, at 6.

On May 16, 2012, FMCSA posted to its website PDFs of the PowerPoint presentations and related documents (hereinafter PowerPoint presentations) that petitioners seek to challenge in this case. *See* J.A. 70-155. The presentations describe the types of information the agency makes available to the public and explain how to use the agency's three online databases. *Id.* They also include the disclaimer that we have set out above. *See* J.A. 150.

On July 16, 2012, the petitioners filed this action, contending that the PowerPoint presentations constitute a new legislative rule that the agency failed to subject to notice and comment as required by the Administrative Procedure Act, 5 U.S.C. § 553, and to a regulatory flexibility analysis as required by the Regulatory Flexibility Act, *id.* § 604. They also contend that the presentations are arbitrary and capricious, inconsistent with the Secretary of Transportation's statutory obligations, and unconstitutional. The petitioners maintain that this court has jurisdiction over their challenges pursuant to the Hobbs Act, 28 U.S.C. § 2342(3)(A).

II

The Hobbs Act grants the courts of appeals exclusive jurisdiction to set aside or determine the validity of certain "rules, regulations, or final orders" of the Secretary of Transportation. 28 U.S.C. § 2342(3).[1] The petitioners maintain that the PowerPoint presentations are reviewable under the

---

[1] *See also* 49 U.S.C. § 351(a) (providing that an action taken by FMCSA pursuant to delegated authority "may be reviewed judicially to the same extent and in the same way as if the action had been an action by the department").

Hobbs Act as a "final order" of the Secretary. *See* Reply Br. 22. Even if that were so, however, the petitioners would still face another hurdle. The Hobbs Act states that "jurisdiction is invoked by filing a petition as provided by section 2344 of this title," 28 U.S.C. § 2342, and the cited section provides that an aggrieved party may file a petition for judicial review of a final order "within 60 days after its entry," *id.* § 2344. We have held that "[t]he 60-day period of the Hobbs Act is jurisdictional in nature, and may not be enlarged or altered by the courts." *United Transp. Union-Ill. Legislative Bd. v. Surface Transp. Bd.*, 132 F.3d 71, 75 (D.C. Cir. 1998) (internal quotation marks omitted).[2]

The petitioners filed their petition for review on July 16, 2012. That date was within 60 days of the posting of the PowerPoint presentations, but it was more than two years after the April 2010 Federal Register notice and more than one year after the Safety Measurement System was implemented in December 2010. Although the petitioners' opening brief did not seriously address the 60-day clock, it was plainly on their mind. The brief characterizes the PowerPoint presentations as "new and far-reaching," Pet'rs' Br. 1; "novel," *id.* at 8; "astonishing," *id.*, and a "sharp reversal of Agency policy," *id.* at 48. But a comparison of the 2010 Federal Register notice and the 2012

---

[2]*See Council Tree Commc'ns, Inc. v. FCC*, 324 F. App'x 3, 4 (D.C. Cir. 2009) ("Under 28 U.S.C. § 2344, '[a]ny party aggrieved by [a] final order' . . . has only '60 days after its entry' to seek judicial review of the order."); *Vernal Enters., Inc. v. FCC*, 355 F.3d 650, 655 (D.C. Cir. 2004) (noting that a petition not filed within 60 days "*must* be dismissed"); *see also Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1204 (2011) (noting that "lower court decisions have uniformly held that the Hobbs Act's 60-day time limit for filing a petition for review of certain final agency decisions . . . is jurisdictional").

PowerPoint presentations makes clear that the latter do not materially alter the former. Rather, as the agency maintains, they "merely describe[] and explain[] the data compiled in the agency's existing Safety Measurement System," which was implemented in December 2010. Resp'ts' Br. 29; *see id.* at 1-2.

The PowerPoint presentations run some 80 pages. The petitioners advised the court at oral argument, however, that one particular page best demonstrates how different the presentations are from the Safety Measurement System as portrayed in the 2010 Federal Register notice. *See* Oral Arg. Recording at 31:30. That page, reproduced at Joint Appendix 153, looks like this:

---

★ **Summary**

**Three public sources of FMCSA data to provide an informed, current, and comprehensive safety picture**

1. Safety and Fitness Electronic Records (SAFER)
http://safer.fmcsa.dot.gov

2. Licensing & Insurance (L&I)
http://li-public.fmcsa.dot.gov

3. CSA's Safety Measurement System (SMS)
http://ai.fmcsa.dot.gov/SMS

FMCSA believes that an examination of a motor carrier's official safety rating in SAFER and their authority and insurance status on L&I, combined with their intervention prioritization status in CSA's SMS, provide users with an informed, current, and comprehensive picture of a motor carrier's safety and compliance standing with FMCSA. FMCSA encourages the public to use the FMCSA information available to help make sound business judgments.

---

The petitioners contend that this page differs from the 2010 notice in four ways.

First, the petitioners allege that the PowerPoint page "encourage[s] trucking customers to utilize 'public data' filtered through the same . . . SMS methodology that the Agency previously had characterized as an internal 'prioritization' tool." Pet'rs' Br. 15. But the Federal Register notice did not say that the Safety Measurement System would function solely as an internal prioritization tool. Rather, it indicated that the system would provide information to the public as well. *See* 75 Fed. Reg. at 18,257-58 ("The new measurement system would be used to identify high-risk motor carriers for on-site investigations . . . . Furthermore, the new []SMS *also would provide* motor carriers and other safety stakeholders such as shippers with regularly updated safety performance assessments through a public Web site . . . ." (emphasis added)).

Although the Federal Register notice did state that the database had originally been used to prioritize agency enforcement, the notice made clear that the new Safety Measurement System was intended to do more. As the agency explained: SMS's predecessor, Safestat was

> an automated algorithm currently used by FMCSA to identify high-risk and other motor carriers for on-site compliance reviews. By implementing the new []SMS algorithm, FMCSA will be able to better identify high-risk motor carriers . . . *and* provide the motor carrier industry and other safety stakeholders with more comprehensive, informative, and regularly updated safety performance data.

*Id.* at 18,256 (emphasis added). Indeed, as the notice pointed out, SafeStat itself "became available to the public" on

FMCSA's website in 1999. *Id.* at 18,257. Thereafter "[m]otor carriers, the insurance industry, shippers, safety advocates, and other interested parties began routinely accessing SafeStat data online for use in their own safety analysis and business decisions." *Id.* at 18,257-58.

Second, the petitioners contend that the PowerPoint page is new because it advises  transportation users to make their "own 'business judgments' about which carriers to utilize," "instead of" relying on FMCSA's safety fitness determinations and licensing. Pet'rs' Br. 7, 16. In so doing, the petitioners assert that the agency forfeited its statutory obligation "to credential a carrier as safe," instead requiring "the transportation user" to be "[t]he new arbiter for fitness." *Id.* at 7.

This assertion does not accurately describe page 153 of the Joint Appendix. That page does not encourage users to make their own business judgments *instead of* relying on safety fitness determinations; rather, it assumes that businesses make business judgments, and it encourages them to use all of the available information to do so. *See* J.A. 153 (stating that FMCSA "believes that an examination of a motor carrier's official safety rating in SAFER and their authority and insurance status on L&I, *combined with* their intervention prioritization status in . . . SMS, provide users with an informed, current, and comprehensive picture of a motor carrier's safety and compliance standing" (emphasis added)). This is nothing new. The 2010 notice said that the new SMS "would provide . . . other safety stakeholders such as shippers with regularly updated safety performance assessments through a public Web site." 75 Fed. Reg. at 18,257. It requires no leap of logic to expect that such stakeholders would use that information to make their own business judgments. Indeed, as we have noted above, shippers and other safety stakeholders had

been using this data for "their own safety analysis and *business decisions*" since 1999. *Id.* at 18,257-58 (emphasis added).

Third, the petitioners insist that this particular PowerPoint page represents a new rule because, "[i]nstead of being able to rely" on the motor carrier safety ratings (found in SAFER) and the licenses granted to motor carriers (found in L&I), "the user is now advised . . . to consider SMS scores at least co-equally with safety ratings." Pet'rs' Br. 7.

Nothing on the PowerPoint page precludes users from relying on the motor carrier safety ratings or license determinations. To the contrary, they are the first two sources of FMCSA data listed on the page. The page does not purport to rank the three sources of information, although if it were read as a ranking, it would appear to rank the SMS database last. *See* J.A. 153. Nor does it advise the user to consider SMS scores "co-equally." It does encourage users to examine all three sources of information, and it is a fair inference that the agency believes that such an examination is needed to obtain "an informed, current, and comprehensive picture of a motor carrier's safety and compliance standing." *Id*. But there is nothing new in that either. *See* 75 Fed. Reg. at 18,256 (stating that SMS would "provide the motor carrier industry and other safety stakeholders with more comprehensive, informative, and regularly updated safety performance data").

Finally, the petitioners' underlying complaint is that the agency used the PowerPoint presentations to promulgate the Safety Measurement System as a de facto "new safety fitness determination standard[]," in derogation of the existing standards promulgated by the agency pursuant to 49 U.S.C. § 31144(a). Pet'rs' Br. 29; *see id.* at 36-38. But this complaint is directly contradicted by the settlement disclaimer, which states that the SMS "△ symbol is not intended to imply any

federal safety rating of the carrier pursuant to 49 USC 31144." J.A. 150. As the petitioners acknowledge, the disclaimer is part and parcel of the challenged PDFs. *See* Oral Arg. Recording at 29:50-30:20. Indeed, it comes just three pages before the page that most offends the petitioners, under a banner headline asking: "What are the limitations of SMS?" *See* J.A. 150, 153.

Although they have no problem with the language of the disclaimer, the petitioners maintain that the PowerPoint presentations effectively overwhelm the disclaimer's message. Oral Arg. Recording at 30:00. In support, they point to *Appalachian Power v. EPA*, in which we held (in a different context) that, if a disclaimer's language is mere "boilerplate," it cannot deprive an agency's actions of binding effect and thereby insulate those actions from judicial review. 208 F.3d 1015, 1023 (D.C. Cir. 2000). But unlike the agency disclaimer at issue in *Appalachian Power*, the disclaimer at issue here is one upon which the petitioners themselves insisted and that they acknowledge is accurate.

Nor is there anything on page 153 of the Joint Appendix that negates the disclaimer's message. To the contrary, that page identifies "[t]hree public sources of FMCSA data," expressly differentiating between the SMS website, which contains the Safety Measurement System scores, and the SAFER website, which contains the safety fitness determinations (SFDs). J.A. 153. Moreover, on the same page as the disclaimer is further language -- not required by the settlement and in larger font than the disclaimer -- that makes precisely the point upon which the petitioners insist: "The SMS data are not a SFD, do not alter a carrier's safety rating, and do not impact a carrier's operating authority." J.A. 150. We therefore see no basis for the petitioners' claim that FMCSA used the PowerPoint presentations to effectively promulgate SMS as a new safety fitness determination standard.

13

\* \* \*

The petitioners acknowledge, as they must, that their challenge to the 2012 PowerPoint presentations is time-barred if those presentations are fully consistent with FMCSA's 2010 Federal Register notice. Oral Arg. Recording at 33:20; *see* 28 U.S.C. § 2344. Because the PowerPoint presentations do no more than describe a Safety Measurement System that was announced in that notice and put in place in December 2010, the petition to review those presentations is untimely under the Hobbs Act.

III

The petitioners argue that we have authority not only to review the PowerPoint presentations, but also to review the underlying methodology employed by the Safety Measurement System -- which they regard as arbitrary and capricious. We have such authority, they maintain, because the PowerPoint presentations are inextricably linked to that methodology. That argument also fails.

The petitioners cite *Public Citizen v. Nuclear Regulatory Commission* for the proposition that, to "the extent that an agency's action necessarily raises the question of whether an earlier action was lawful, review of the earlier action for lawfulness is not time-barred." Reply Br. 27 (quoting *Public Citizen*, 901 F.2d 147, 151-52 (D.C. Cir. 1990) (internal quotation marks omitted)). Although the petitioners do not mention it, *Public Citizen* relies on the reopening doctrine. *See* 901 F.2d at 150. That doctrine "allows an otherwise stale challenge to proceed because 'the agency opened the issue up anew,' and then 'reexamined . . . and reaffirmed its [prior] decision.'" *P & V Enters. v. U.S. Army Corps of Eng'rs*, 516 F.3d 1021, 1023 (D.C. Cir. 2008) (quoting *Public Citizen*, 901

F.2d at 150-51). "The doctrine only applies, however, where the entire context demonstrates that the agency has undertaken a serious, substantive reconsideration of the existing rule." *Id.* at 1024 (internal quotation marks omitted); *see Am. Road & Transp. Builders Ass'n v. EPA*, 588 F.3d 1109, 1114-16 (D.C. Cir. 2009); *Nat'l Mining Ass'n v. U.S. Dep't of Interior*, 70 F.3d 1345, 1352 (D.C. Cir. 1995).

FMCSA did not undertake a substantive reconsideration of the Safety Measurement System methodology when it published the challenged PowerPoint presentations, nor do those presentations alter that methodology. Rather, as we have concluded above, the PowerPoint presentations merely summarize and explain information concerning the Safety Measurement System, which the agency implemented in 2010. Accordingly, the reopening doctrine is of no assistance to the petitioners. The petitioners' challenge to the Safety Measurement System, like their challenge to the 2012 PowerPoint presentations, is effectively a challenge to the policy FMCSA announced and implemented in 2010. That challenge is time-barred by the Hobbs Act.

IV

For the foregoing reasons, the petition for review is

*Dismissed.*