# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**No. 20-5081**

WESTERN WATERSHEDS PROJECT,
APPELLANTS, ET AL.,

v.

DEBRA ANNE HAALAND, IN HER OFFICIAL CAPACITY AS
SECRETARY OF THE DEPARTMENT OF THE INTERIOR, ET AL.,
APPELLEES

**September Term, 2020**
FILED ON: JUNE 18, 2021

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-01529)

Before: TATEL and WALKER, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

## J U D G M E N T

We heard this appeal on the record from the United States District Court for the District of Columbia and the parties' briefs and arguments. We fully considered the issues and determined that a published opinion is unnecessary. *See* D.C. Cir. R. 36(d).

We **AFFIRM** the district court's judgment.

\*　　\*　　\*

The Bureau of Land Management protects wild horses and burros. *See* Wild Free-Roaming Horses and Burros Act, Pub. L. No. 92-195, 85 Stat. 649 (1971); 16 U.S.C. §§ 1331-1340. On August 20, 2008, the Bureau approved a resource management plan for an area of Nevada where food and water for wild horses are scarce. The plan called for zero wild horses in [that area of Nevada] because it "do[es] not provide sufficient habitat resources." J.A. 179. The Bureau would therefore "[r]emove wild horses" from the area. *Id.*

In September 2009, the Bureau began to implement its resource management plan by taking the formal steps required for a roundup in October 2009. The Bureau's purpose was "to remove all excess wild horses [in that area of Nevada] to implement the . . . 2008 [resource

1

management plan]." J.A. 196. The Bureau acknowledged, however, that "[m]ore than one gather would likely be needed to remove all of the wild horses." J.A. 186.

But despite some success in that roundup, some wild horses remained. So in April 2018, the Bureau decided to conduct another roundup. Again, the goal was to "remove all wild horses from" that area of Nevada. J.A. 275.

In June 2018, organizations committed to protecting wild horses sued the Bureau to stop the 2018 roundup. The district court granted summary judgment to the Bureau and denied the Plaintiffs' cross-motion. *American Wild Horse Campaign v. Bernhardt*, 442 F. Supp. 3d 127 (D.D.C. 2020).

We have jurisdiction over the Plaintiffs' appeal. 28 U.S.C. § 1291. Because the Plaintiffs sued three years too late, we affirm the district court's decision.

\*　　\*　　\*

Generally, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). For challenges to agency decisions, the right of action first accrues when a final agency action is ripe for review. *See Hardin v. Jackson*, 625 F.3d 739, 743 (D.C. Cir. 2010) ("right of action first accrues on the date of the final agency action") (cleaned up); *see also Federal Express Corp. v. Mineta*, 373 F.3d 112, 119 (D.C. Cir. 2004) (the statute-of-limitations clock begins ticking when a claim ripens). So to determine the statute of limitations for challenges to agency actions, courts must first decide when the agency action was final, next decide when the plaintiffs' challenge to that final action ripened, and then add six years.

For step one, the Bureau's 2008 resource management plan constituted final agency action. "Resource management plans are designed to guide and control future management actions and the development of subsequent, more detailed and limited scope plans for resources and uses." 43 C.F.R. § 1601.0-2. The Bureau must "manage in accordance with land use plans, and the regulatory requirement that authorizations and actions conform to those plans, prevent [the Bureau] from taking actions inconsistent with the provisions of a land use plan." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 69 (2004) (cleaned up).

Thus, the 2008 resource management plan ended the Bureau's decisionmaking process for the wild horses in question. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). It also determined the Bureau's obligation to round up the wild horses, which is rooted in both statute and regulation. *See id.* at 178; *see also* 16 U.S.C. § 1333(b)(2); 43 C.F.R. § 4710.1. The Bureau couldn't shirk that obligation unless it amended the plan, which it didn't do. *See Norton*, 542 U.S. at 69 ("Unless and until the plan is amended, such actions can be set aside as contrary to law pursuant to 5 U.S.C. § 706(2)."). Nor did it ever "undertake[] a serious, substantive reconsideration" of the plan, dooming Plaintiffs' argument for applying the reopening doctrine. *Alliance for Safe, Efficient & Competitive Truck Transportation v. Federal Motor Carrier Safety Administration*, 755 F.3d 946, 954 (D.C. Cir. 2014) (cleaned up).

For step two, any challenge to the Bureau's 2008 plan ripened in 2009. That's when the Bureau implemented the 2008 plan. *See Ohio Forestry Association, Inc. v. Sierra Club*, 523 U.S. 726, 732-37 (1998) (a claim against an agency ripens when the agency implements the plan). That the Bureau anticipated it would need multiple roundups to accomplish its zero-horses goal does not alter this conclusion. The statute-of-limitations clock started with the first roundup, when the claim "*first* accrue[d]." 28 U.S.C. § 2401(a) (emphasis added). It didn't restart with each roundup. Thus, for step three, the Plaintiffs had until 2015 — six years after 2009 — to challenge the Bureau's 2008 decision. Their failure to sue until 2018 means they sued three years too late.

The Plaintiffs say that conclusion conflicts with *Ohio Forestry*. But that case simply clarifies that a claim ripens when an agency begins to implement a plan. *See* 523 U.S. at 732-37. Here, again, the agency began to implement its plan in 2009, so the Plaintiffs only had until 2015 to sue.

Finally, although the Plaintiffs raised additional claims in the district court, they abandoned those claims by failing to meaningfully argue them here. *See, e.g.*, *Government of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("A party forfeits an argument by mentioning it only in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (cleaned up).

We therefore affirm.

\*     \*     \*

This disposition is unpublished. *See* D.C. Cir. R. 36(d). We direct the Clerk to withhold this mandate until seven days after resolution of a timely petition for panel or en banc rehearing. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:     /s/
Daniel J. Reidy
Deputy Clerk

3