# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 12, 2018        Decided July 17, 2018

No. 17-1144

MATSON NAVIGATION COMPANY, INC.,

PETITIONER

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION AND
MARITIME ADMINISTRATION,

RESPONDENTS

APL MARINE SERVICES, LTD. AND APL MARITIME, LTD.,

INTERVENORS

———

On Petition for Review of Decision and Order of the Maritime
Administration

———

*Mark A. Perry* argued the cause for petitioner. With him
on the briefs was *Rachel S. Brass*.

*Casen B. Ross*, Attorney, U.S. Department of Justice,
argued the cause for respondents. With him on the briefs were
*Jessie K. Liu*, U.S. Attorney, *Matthew M. Collette*, Attorney,
*Steven G. Bradbury*, General Counsel, U.S. Department of
Transportation, *Paul M. Geier*, Assistant General Counsel for

Litigation and Enforcement, *Joy Park*, Senior Trial Attorney, and *Joseph O. Click*, Attorney-Advisor.

*Brian T. Burgess* argued the cause for intervenors. With him on the brief were *William M. Jay*, *Robert T. Basseches*, and *Gerard J. Cedrone.*

Before: ROGERS, GRIFFITH, and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Matson Navigation Company, Inc., a competitor of APL Marine Services, Ltd., and APL Maritime, Ltd. (together, "APL"), petitions for review of three orders of the Maritime Administration approving APL's requested replacement vessels in the Maritime Security Fleet. For the following reasons, we dismiss the petition for review for lack of jurisdiction under 28 U.S.C. § 2342.

## I.

The Maritime Security Fleet, established by the Secretary of Transportation, in consultation with the Secretary of Defense, is to consist of "active, commercially viable, militarily useful, privately owned vessels to meet national defense and other security requirements and maintain a United States presence in international commercial shipping." 46 U.S.C. § 53102(a). The Fleet is a part of the Merchant Marine "necessary for the national defense and the development of the domestic and foreign commerce." *Id.* § 50101(a). It is "owned and operated as vessels of the United States by citizens of the United States." *Id.* § 50101(a)(3). Fleet vessels must be covered by a Maritime Security Program Operating Agreement with the owner or operator. *Id.* § 53103(a). The owner or operator, known as a "contractor," must meet citizenship

requirements and, in turn, can receive operating subsidies for its vessels. *Id.* §§ 53101(2), 53102(b) & (c), 53105(b). As relevant here, "[a] contractor may replace a vessel under an operating agreement with another vessel that is eligible to be included in the Fleet under section 53102(b), if the Secretary, in conjunction with the Secretary of Defense, approves the replacement of the vessel." *Id.* § 53105(f).

The Maritime Security Program ("MSP") is administered by the Maritime Administration ("MARAD"). *See* 46 C.F.R. § 296.1. MARAD regulations provide that:

> A Contractor who disagrees with the findings, interpretations or decisions of the Maritime Administration or the Contracting Officer with respect to the administration of this part or any other dispute or complaint concerning MSP Operating Agreements may submit an appeal to the Administrator . . . within 60 days following the date of the document notifying the Contractor of the administrative determination . . . . Such an appeal is a prerequisite to exhausting administrative remedies.

*Id.* § 296.50(a). The regulations state a "contractor" refers to "the owner or operator of a vessel that enters into an MSP Operating Agreement for the vessel with the Secretary of Transportation (acting through MARAD)." *Id.* § 296.2.

APL, after reviewing its "total network of U.S. flag operations," requested MARAD on December 4, 2014, to approve, with regard to APL reinstating its U.S.-Guam shipping service, replacement of two "S-12" vessels, pursuant to 46 U.S.C. § 53105(f). Letter from Eric L. Mensing, Chief Executive Officer of APL, to Paul N. Jaenichen, Sr., MARAD Administrator at 1, 3 (Dec. 4, 2014). The vessels were covered

under MSP Operating Agreements but no longer met the eligibility requirements in 46 U.S.C. § 53102(b) on "commercial viability" or requirements in the Operating Agreements on "militarily useful capability." *Id.* at 1. APL sought their replacement by two smaller "feeder" vessels that met those requirements, and sought MARAD's approval before proceeding with acquisition and U.S. flagging. After receiving approval in principle by MARAD and the U.S. Transportation Command, provided the replacement vessels met all MSP requirements, APL requested, on August 27, 2015, approval of the NEW DYNAMIC as a replacement vessel. On September 16, 2015, APL sought to rename that vessel as APL Guam, and to substitute its contractor under the Operating Agreement.

On October 22, 2015, MARAD approved APL Guam as a replacement, in light of the recommendation by the Commander of the U.S. Transportation Command that section 53102(b) requirements had been met and that those findings sufficed to fulfill the joint approval contemplated in 46 U.S.C. § 53105(f). MARAD's 2015 Approval Order stated that the replacement vessel's owner was "a citizen of the United States within the meaning of 46 U.S.C. § 50501"; that the "[r]eplacement vessel will provide transportation in foreign commerce pursuant to the requirements of 46 U.S.C. § 53102(b)(2)"; and that it is "commercially viable." 2015 Approval Order at 3.

Because APL Guam did not satisfy APL's shipping needs in the U.S.-Guam route, APL requested MARAD, on August 24, 2016, to approve replacement of another of its Fleet vessels with APL Saipan pursuant to 46 U.S.C. § 53105(f). On December 20, 2016, MARAD approved the replacement. The 2016 Approval Order stated that APL Saipan met statutory eligibility and citizenship requirements under 46 U.S.C.

§ 53102(b)(1) & (c)(2); that it provided foreign commerce or mixed foreign commerce and domestic trade allowed under a registry endorsement, 46 U.S.C. § 12111, pursuant to the requirements of 46 U.S.C. §§ 53102(b)(2) and 53105(a)(1)(A); and that it met the commercial viability requirements, 46 U.S.C. § 53102(b)(4)(B). 2016 Approval Order at 1–2.

Matson also operates vessels in the U.S.-Guam route but does not have an MSP Operating Agreement with MARAD. Shortly before MARAD's approval of APL Saipan as a replacement vessel, Matson had urged MARAD not to allow APL to operate APL Guam and APL Saipan in the U.S.-Guam trade route because they did not meet the statutory requirements for "replacement vessels" and the operation of APL Guam was "distorting the market and creating an unlevel playing field" in service to Guam. Letter from Matthew J. Cox, President and Chief Executive Officer of Matson Navigation Co., Inc., to Paul N. Jaenichen, MARAD Administrator at 1–2 (Dec. 12, 2016); *see* Letter from Michael F. Scanlon, K&L Gates, to David J. Tubman, Jr., Chief Counsel of MARAD and Dep't of Transp. (Dec. 15, 2016). Matson also filed a protest, styled as "Amended Appeal of the Determinations under Maritime Security Program Operating Agreement Numbers MA/MSP-54 and MA/MSP-57," on February 17, 2017, as amended March 17. It raised the issue "whether assistance payments awarded to support U.S.-flag vessels operating in the international trades under the Maritime Security Program . . . can be used to subsidize vessels operating in regular service in Guam, a domestic trade." Am. Appeal at 1. Matson challenged the 2015 and 2016 Approval Orders on the principal grounds that APL's replacement vessels did not operate in foreign commerce and were not commercially viable.

On April 7, 2017, the Acting Chief Counsel of MARAD rejected Matson's appeal on two grounds. First, because it was

not an MSP "contractor" under 46 C.F.R. § 296.2, Matson lacked standing to appeal the 2015 and 2016 Approval Orders pursuant to MARAD's regulation, 46 C.F.R. § 296.50(a). Second, on the merits, "the APL replacement vessels provide transportation in mixed foreign commerce and domestic trade, as authorized by 46 U.S.C. §§ 12111 and 53105(a)(1)(A)," and "APL's operation of the replacement vessels complies with the MSP statute, as did MARAD's approval of the vessel replacements."  2017 Appeal Decision at 3.

On June 2, 2017, Matson filed a petition for review in this court of MARAD's 2017 Appeal Decision, as well as its 2015 and 2016 Approval Orders.

## II.

The Administrative Orders Review Act (known as the "Hobbs Act") provides that courts of appeals shall have

> exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all rules, regulations, or final orders of . . . the Secretary of Transportation *issued pursuant to* section 50501, 50502, 56101–56104, or 57109 of title 46 or pursuant to part B or C of subtitle IV, subchapter III of chapter 311, chapter 313, or chapter 315 of title 49.

28 U.S.C. § 2342(3)(A) (emphasis added).  Petitions for review under the Hobbs Act must be filed "within 60 days" of the "entry" of the agency's final order.  *Id.* § 2344; *see Energy Probe v. NRC*, 872 F.2d 436, 438 (D.C. Cir. 1989).  The time limit "is jurisdictional in nature, and may not be enlarged or altered by the courts."  *All. for Safe, Efficient & Competitive Truck Transp. v. Fed. Motor Carrier Safety Admin.*, 755 F.3d 946, 950 (D.C. Cir. 2014) (internal quotation marks and

citation omitted). This period can be tolled by "[t]he timely filing of a motion to reconsider," *Stone v. INS*, 514 U.S. 386, 392 (1995) (citing *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284 (1987)), but no "basis for tolling" exists where "there is no provision for rehearing or reconsideration" or administrative appeal available to the petitioner, *Laminators Safety Glass Ass'n v. Consumer Prod. Safety Comm'n*, 578 F.2d 406, 411 (D.C. Cir. 1978).

In the three challenged orders, MARAD made and upheld final determinations of APL's contractual obligations for the two approved replacement vessels. *See Citizens Ass'n of Georgetown v. Fed. Aviation Admin.*, 886 F.3d 130, 136 (D.C. Cir. 2018); *Adenariwo v. Fed. Mar. Comm'n*, 808 F.3d 74, 78 (D.C. Cir. 2015); 46 U.S.C. § 53105. Unless the three orders were issued pursuant to a statute listed in the Hobbs Act vesting exclusive jurisdiction in the courts of appeals, 28 U.S.C. § 2342(3)(A), and the petition for their review is timely, *id.* § 2344, this court lacks jurisdiction to address Matson's petition for review. If the court lacks exclusive jurisdiction because an order was not issued pursuant to a statute listed in the Hobbs Act, then Matson is subject to the "'default rule'" and must "'go first to district court rather than to a court of appeals.'" *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (quoting *Int'l Bhd. of Teamsters v. Peña*, 17 F.3d 1478, 1481 (D.C. Cir. 1994) ("*IBT*")). Here, Subtitle V (Merchant Marine) of Title 46 of the United States Code is silent on judicial review.

In determining whether this court has exclusive jurisdiction over Matson's challenges to MARAD's three final orders, the Supreme Court's recent decision in *National Association of Manufacturers v. Department of Defense*, 138 S. Ct. 617 (2018) ("*NAM*"), is instructive. There, the Court considered a provision of the Clean Water Act, 33 U.S.C.

§ 1369(b)(1), which enumerated seven categories of agency actions that must be challenged directly in the courts of appeals, including certain limitations issued under 33 U.S.C. § 1311. *NAM*, 138 S. Ct. at 626. The Court concluded that, viewed in context, the word "under" in "under section 1311" is "most naturally read to mean that the effluent limitation or other limitation must be approved or promulgated 'pursuant to' or 'by reason of the authority of' § 1311." *Id.* at 630 (citing *St. Louis Fuel & Supply Co. v. FERC*, 890 F.2d 446, 450 (D.C. Cir. 1989); BLACK'S LAW DICTIONARY 1368 (5th ed. 1979)). Further, the Court instructed, the provision pursuant to which an agency acts is the statute that "direct[s] or authorize[s]" the agency to take the relevant action. *Id.*

APL's requests that MARAD approve replacement vessels in the Fleet pursuant to 46 U.S.C. § 53105(f), MARAD's 2015 and 2016 Approval Orders, as well as the 2017 Appeal Decision suggest MARAD acted pursuant to its authority to "approve[] the replacement of the vessel[s]" under section 53105(f), which is not listed in the Hobbs Act. *Cf. Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n v. Mar. Admin.*, 215 F.3d 37, 39, 42 (D.C. Cir. 2000). Matson contends, however, this court has jurisdiction because MARAD's "decisions involve regulations and programs that are 'interrelated' with citizenship determinations" in 46 U.S.C. § 50501. Appellant's Br. 26–27.

46 U.S.C. § 50501 identifies which organizations are "deemed citizens of the United States." It "groups corporations, partnerships, and associations into those deemed United States citizens and those deemed non-citizens." *Alaska Excursion Cruises, Inc. v. United States*, 595 F. Supp. 14, 16 (D.D.C. 1984) (describing then-section 802(a)). It does not "authorize" MARAD to act on a contractor's request for approval of a replacement vessel. *NAM*, 138 S. Ct. at 630. That

authority is provided in section 53105(f), which empowers MARAD, upon request of a contractor, to approve a vessel as a replacement if it meets the requirements of section 53102(b), which does not always require contractors to fit the definition of a U.S. citizen in section 50501. Insofar as section 53105(f) "direct[s] or authorize[s]" MARAD to approve replacement vessels, *NAM*, 138 S. Ct. at 630, the relevant consideration, assuming Matson acted timely, is whether MARAD's three orders were also issued pursuant to section 50501 or any other statute listed in the Hobbs Act vesting exclusive jurisdiction in the courts of appeals.

First, in its 2015 order approving APL Guam as a replacement, MARAD found the vessel was owned by a citizen of the United States "within the meaning of 46 U.S.C. § 50501," thus satisfying the owner's eligibility requirements in 46 U.S.C. § 53102(c)(2). 2015 Approval Order at 3. Then, in view of all of its findings, MARAD "determined" that APL Guam "meets the requirements of 46 U.S.C. § 53105(f) regarding replacement vessels." *Id.* at 4. MARAD's "explicit reliance" on section 50501 could provide this court with jurisdiction under the Hobbs Act over the 2015 approval. *See IBT*, 17 F.3d at 1482.

But the court has no occasion to decide this question because Matson failed to file a timely petition for review. Its petition for review was not filed until June 2, 2017, long after the jurisdictional 60-day period in the Hobbs Act for seeking review of the 2015 Approval Order had run. 28 U.S.C. § 2344; *All. for Safe, Efficient & Competitive Truck Transp.*, 755 F.3d at 950. Matson maintains its administrative appeal tolled the 60-day clock. But even assuming Matson was eligible to file an administrative appeal under MARAD regulations, its appeal was untimely because it was filed more than a year after the approval order and MARAD's regulation sets a 60-day filing

period for seeking review, 46 C.F.R. § 296.50(a). Matson suggests that because the merits of its challenges were addressed in the 2017 Appeal Decision, MARAD eschewed reliance on any untimeliness principles. It relies on *Bowden v. United States*, 106 F.3d 433, 438–39 (D.C. Cir. 1997), where the court held on the particular facts that the agency had waived its timeliness defense by addressing the merits of a complaint and failing to mention timeliness on three occasions — during the administrative process and before two courts. Even if MARAD forfeited a timeliness defense, Matson has no vessels in the Fleet and is therefore not a "contractor," 46 C.F.R. § 296.2, for whom MARAD's regulations provide an administrative appeal, *see id.* § 296.50(a). "Because there is no provision for rehearing or reconsideration" applicable to Matson, there is no "basis for tolling the 60 day statutory period for judicial review in this case." *Laminators Safety Glass Ass'n*, 578 F.2d at 411.

Second, the 2016 Approval Order also does not trigger Hobbs Act jurisdiction. Matson's petition for review was not filed within sixty days of this Approval Order and it is likely untimely as well. Unlike the 2015 Approval Order, Matson timely filed an administrative appeal of the 2016 Approval Order. Matson therefore maintains that it would suffer "'unfair surprise'" if the Hobbs Act time limit were not thereby tolled. Pet'r's Reply Br. 23–24 (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012)). In its view, MARAD's regulation on administrative appeals, 46 C.F.R. § 296.50, is ambiguous on whether non-contractors must file an administrative appeal in order to exhaust administrative remedies. The text of the regulation refers to contractors and Matson has never claimed to be a contractor, for it has no MSP Operating Agreement covering its vessels in the U.S.-Guam trade. Matson suggests that even if its administrative appeal were defective, it was filed in good faith and merits tolling the

time limit. Pet'r's Reply Br. 24–25 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 90, 95–96 (1990)).

The court need not decide whether the Hobbs Act clock was tolled because even if Matson's petition for review were timely as to the 2016 Approval Order, this court lacks jurisdiction for another reason. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). In contrast to the 2015 Approval Order, MARAD never explicitly invoked section 50501 in reaching its eligibility determination in 2016. Nor is it apparent from its decision that it was addressing U.S. citizenship within the meaning of section 50501. The 2016 Approval Order stated that APL Saipan "will be owned by a U.S. Citizen Trust and demise chartered to a U.S. documentation citizen" and thereby "meets the citizenship requirements . . . established by 46 U.S.C. § 53102(c)." 2016 Approval Order at 1. That section references section 50501 and in some circumstances requires the entity chartering the vessel to be a section 50501 U.S. citizen. 46 U.S.C. § 53102(c)(2)(A)(ii)(II) & (B). In this order, MARAD did not make an explicit finding that the entities involved were U.S. citizens within the meaning of section 50501.

Assuming that MARAD implicitly made a section 50501 finding in order to approve APL's second replacement request pursuant to section 53105(f), the 2016 Approval Order does not "interpret" section 50501 citizenship, unlike in *Conoco, Inc. v. Skinner*, 970 F.2d 1206, 1214–15 (3d Cir. 1992), and *Liberty Glob. Logistics LLC v. U.S. Mar. Admin.*, No. 13-cv-0399, 2014 WL 4388587, at *4 (E.D.N.Y. Sept. 5, 2014), on which Matson relies. Statutory grounds for jurisdiction are not to be given "a more expansive interpretation than their text warrants." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005). Absent explicit reference or its functional equivalent in the 2016 Approval Order to a statute

listed in the Hobbs Act, the court would expand its exclusive jurisdiction beyond that which Congress intended. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 746 (1985); *cf. NAM*, 138 S. Ct. at 634; *Am. Portland Cement All. v. EPA*, 101 F.3d 772, 776 (D.C. Cir. 1996). Background principles relied on by the agency in making a final determination are insufficient to vest exclusive jurisdiction in the courts of appeals. *See NAM*, 138 S. Ct. at 631. Because there is no indication that the 2016 Approval Order was issued pursuant to section 50501 or other statute listed in the Hobbs Act, this court lacks exclusive jurisdiction to consider Matson's challenge, and it must initially pursue its challenge in the district court.

Finally, although Matson's petition for review of the 2017 Appeal Decision was timely, this court lacks jurisdiction to consider it. To the extent that decision rested on administrative standing, Matson has not challenged that aspect of the decision, so any challenge on that ground is forfeited. *U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 708 (D.C. Cir. 2016). The Decision also addressed the merits of Matson's challenges. Even if construed as a denial of a proper motion for reconsideration of the 2015 and 2016 Approval Orders, the Decision did not reopen or reference earlier determinations on citizenship or any portion of the Approval Orders issued pursuant to MARAD's authority under section 50501. *See Am. Ass'n of Paging Carriers v. FCC*, 442 F.3d 751, 756 (D.C. Cir. 2006). Nor does the Decision cite or rest its analysis on section 50501. *Cf. IBT*, 17 F.3d at 1482. To the extent the 2015 and 2016 Approval Orders are discussed, the Decision invokes only MARAD's authority to interpret and apply the meaning of "foreign commerce," as defined in 46 U.S.C. §§ 12111 and 53105(a)(1)(A), and to approve replacement vessels, as authorized by section 53105(f). Consequently, the Decision on the merits was not issued pursuant to section 50501 or other statute listed in the Hobbs Act, and this court lacks exclusive

jurisdiction to review it. Matson's challenge to the 2017 Appeal Decision must initially be pursued in the district court.

Accordingly, we dismiss the petition for review for lack of jurisdiction under the Hobbs Act.