# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 13, 2022       Decided November 15, 2022

No. 21-1162

OHIO NUCLEAR-FREE NETWORK AND BEYOND NUCLEAR,
PETITIONERS

v.

U.S. NUCLEAR REGULATORY COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

AMERICAN CENTRIFUGE OPERATING, LLC,
INTERVENOR

On Petition for Review of an Order
of the Nuclear Regulatory Commission

*Terry J. Lodge* argued the cause for petitioners. With him on the briefs was *Wallace L. Taylor*.

*Eric V. Michel*, Senior Attorney, U.S. Nuclear Regulatory Commission, argued the cause for respondents. With him on the brief were *Todd Kim*, Assistant Attorney General, U.S. Department of Justice, *Justin D. Heminger*, Attorney, and *Andrew P. Averback*, Solicitor, U.S. Nuclear Regulatory Commission.

*Brad Fagg* argued the cause for intervenor American Centrifuge Operating, LLC in support of respondent.

Before: SRINIVASAN, *Chief Judge*, HENDERSON, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Ohio Nuclear-Free Network (Ohio Nuclear) and Beyond Nuclear petition for review of a decision of the Nuclear Regulatory Commission (NRC, Commission), issuing an amended materials license to American Centrifuge Operating, LLC (American Centrifuge). The amended license authorizes American Centrifuge to produce high-assay, low-enriched uranium (HALEU) at a facility near Piketon, Ohio pursuant to a demonstration program with the U.S. Department of Energy (DOE). The petitioners contend, *inter alia*, that the NRC issued the amended license without first preparing an Environmental Impact Statement (EIS), which they assert was required by the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332(C). Under the Hobbs Act, 28 U.S.C. § 2344, however, we lack jurisdiction to consider their petition because they failed to become parties to the NRC proceedings below. Accordingly, we dismiss their petition for review.

**I.**

The Atomic Energy Act (AEA), 42 U.S.C § 2011 *et seq.*, authorizes the NRC to issue materials licenses for the handling of special nuclear material like enriched uranium—a substance enhanced in the uranium-235 isotope and used to fuel America's nuclear power plants, *see id.* §§ 2073(a), 2077(a), 2014(aa); *Nuclear Info. & Res. Serv. v. NRC*, 509 F.3d 562, 565 (D.C. Cir. 2007). Pursuant to this authority, the NRC issued a

30-year materials license to U.S. Enrichment Corp. in 2007. The license authorized U.S. Enrichment Corp. to construct, operate and decommission the American Centrifuge Plant, a uranium-enrichment facility located on a DOE reservation near Piketon, Ohio. It further authorized uranium enrichment of up to ten per cent uranium-235 at the American Centrifuge Plant.

NEPA requires all federal agencies to document the environmental impacts of certain proposed federal actions, including the issuance of a license to construct or operate a uranium-enrichment facility. *See* 42 U.S.C. § 4332(C). To meet its NEPA obligations, the NRC promulgated 10 C.F.R. Part 51, which specifies two forms of the environmental documentation that NEPA ordinarily requires: an EIS or an environmental assessment (EA). *See Nat. Res. Def. Council v. NRC*, 823 F.3d 641, 643 (D.C. Cir. 2016). An EIS is required for any proposed "major Federal action[] significantly affecting the quality of the human environment," 42 U.S.C. § 4332(C); 10 C.F.R. § 51.20(a)(1), or for any proposed action for which the Congress or the Commission has categorically required an EIS, *see* 42 U.S.C. § 2243(a)(1); 10 C.F.R. § 51.20(a)(2), (b). An EA, by contrast, is required for any proposed federal action that does not require an EIS and is not otherwise categorically excluded from environmental review. 10 C.F.R. § 51.21; *see Myersville Citizens for a Rural Cmty., Inc. v. FERC*, 783 F.3d 1301, 1322 (D.C. Cir. 2015). Because an EIS is categorically required for the initial licensing of a uranium-enrichment facility, *see* 42 U.S.C. § 2243(a)(1); 10 C.F.R. § 51.20(b)(7), the NRC prepared one that addressed the environmental consequences of U.S. Enrichment Corp.'s proposed licensing of the American Centrifuge Plant before issuing the license in 2007.

Despite receiving the license, U.S. Enrichment Corp. never constructed the American Centrifuge Plant or put it into

operation and later transferred the license to its wholly owned subsidiary, American Centrifuge. In 2019, American Centrifuge entered a three-year contract with the DOE to demonstrate its ability to produce uranium enriched between five and twenty per cent, commonly known as high-assay, low-enriched uranium (HALEU). *See* 42 U.S.C. § 16281(d)(4). Under the demonstration program, American Centrifuge would produce and provide to the DOE up to 600 kilograms of HALEU enriched at 19.75 per cent. The DOE wanted both to determine whether HALEU could be produced using existing technology and to assess HALEU's potential for research and development activities.

American Centrifuge then sought an amendment to its materials license to authorize the production of HALEU for the DOE demonstration program. It requested NRC authorization to produce and possess 19.75 per cent enriched uranium, with an upper limit of twenty-five per cent enrichment to account for minor variations in the enrichment process. With the amendment request, American Centrifuge also submitted an environmental report to assist the NRC in its independent review of the proposed amendment under NEPA, *see* 10 C.F.R. §§ 51.14, 51.45, as well as several other documents related to the NRC's safety and security review of the proposed amendment, *see* 10 C.F.R. Parts 73–74. The NRC posted a notice of the amendment request on its website in accordance with its regulations, apprising any interested persons of the proposed amendment. *See* 10 C.F.R. § 2.105(a).

The AEA and its regulations set forth the procedures by which an interested "person" may intervene in a licensing proceeding like the one at issue here. "In any proceeding . . . for the granting, suspending, revoking, or amending of any license or construction permit," a "person whose interest may be affected by the proceeding" may request a hearing and

thereby be admitted "as a party" to the proceeding. 42 U.S.C. § 2239(a)(1)(A). The hearing request must specify the "contentions" such person "seeks to have litigated in the hearing" and must be submitted within sixty days after the NRC publishes notice of the proposed action on its website or sixty days after the hearing requestor receives actual notice of the proposed action, whichever is later. *See* 10 C.F.R. § 2.309(a), (b)(4). The Commission will grant a timely hearing request or petition for leave to intervene if the requestor has standing to intervene and proposes at least one "admissible" contention for adjudication. *Id.* § 2.309(a); *see also id.* § 2.105(e)(2).

Petitioners Ohio Nuclear and Beyond Nuclear could have submitted a hearing request pursuant to 10 C.F.R. § 2.309 but they did not. Rather, on March 30, 2021, they emailed a letter to the NRC staff arguing that the proposed license amendment violated federal law and asking the NRC, in reviewing the proposal, to prepare an EIS and consider certain potential environmental consequences. The petitioners' letter did not request a hearing or seek permission to intervene in the licensing proceedings, nor did the petitioners submit anything further to the NRC.

In June 2021, the NRC completed an EA of the proposed license amendment and awarded American Centrifuge the amended license. The EA found that the proposal would have "no significant environmental impact," *see* EA/FONSI Public Notice, 86 Fed. Reg. 31,539 (June 14, 2021) (App. 338), thereby rendering an EIS unnecessary, *see* 42 U.S.C. § 4332(C); 10 C.F.R. § 51.20(a)(1); *Myersville Citizens*, 783 F.3d at 1322. In granting the license, the NRC authorized American Centrifuge to possess twenty-five per cent enriched uranium but forbade it from extracting uranium enriched above twenty per cent. American Centrifuge has yet to produce

HALEU for the DOE demonstration program and in fact extended its contract with the DOE for an additional six months, through the end of November 2022.

Ohio Nuclear and Beyond Nuclear now challenge before us the NRC's authorization of the demonstration program. They filed a timely petition for review of the NRC's final order awarding American Centrifuge the amended license, arguing that the NRC violated NEPA by failing to prepare an EIS and by failing to address the environmental concerns raised in their letter to the NRC staff. The NRC moved to dismiss the petition for lack of jurisdiction and American Centrifuge intervened on behalf of the NRC.

## II.

Ohio Nuclear and Beyond Nuclear cite the Hobbs Act, 28 U.S.C. § 2344, as the basis for our jurisdiction. The Hobbs Act confers on this Court jurisdiction to review "all final orders" of the NRC that are "made reviewable by section 2239 of title 42." 28 U.S.C. § 2342(4). Section 2239, in turn, makes "subject to judicial review . . . [a]ny final order entered in any proceeding" under the AEA, 42 U.S.C. ch. 23, "for the granting, suspending, revoking, or amending of any license." 42 U.S.C. § 2239(b)(1), (a). But under the Hobbs Act, our jurisdiction "is invoked" only if a "party aggrieved by the final order" files a timely petition for review. 28 U.S.C. § 2344. The "party aggrieved" requirement, we have explained, demands "that petitioners have been parties to the underlying agency proceedings" in order to invoke our jurisdiction to review their petition. *ACA Int'l v. FCC*, 885 F.3d 687, 711 (D.C. Cir. 2018); *see also Alaska v. FERC*, 980 F.2d 761, 763 (D.C. Cir. 1992) ("We have routinely interpreted this phrase to allow petitions by parties who were intervenors before the Commission and who would suffer injury-in-fact from its final disposition.").

When "intervention in agency adjudication or rulemaking is prerequisite to participation therein, standing to seek judicial review of the outcome will be denied to those who did not seek—or who sought but were denied—leave to intervene." *Water Transp. Ass'n v. ICC*, 819 F.2d 1189, 1192 (D.C. Cir. 1987). Because neither petitioner properly intervened in the underlying NRC proceeding, they are not "part[ies] aggrieved" by the agency order and, accordingly, we lack jurisdiction to review their petition.

Although the "degree of participation necessary to achieve party status varies according to the formality with which the proceeding was conducted," *Water Transp. Ass'n*, 819 F.2d at 1192, the AEA and its regulations address the manner in which interested persons may become parties to the precise sort of proceeding at issue. "In any proceeding under" the AEA for the "amending of any license," "the Commission shall grant a hearing upon the request of any person whose interest may be affected by the proceeding[] and shall admit [the] person as a party to such proceeding." 42 U.S.C. § 2239(a)(1)(A). To request a hearing, a person "who desires to participate as a party" must file a written request specifying the contentions it intends to raise at the hearing. 10 C.F.R. § 2.309(a); *see also id.* § 2.309(f) (describing the admissibility standards applicable to contentions). The Commission "will grant the request" if the interested person raises "at least one admissible contention that meets the requirements of paragraph (f)" and "has standing under the provisions of paragraph (d)." *Id.* § 2.309(a); *see also id.* § 2.309(d). If the request is denied, the Commission's regulations permit the interested person to immediately appeal that denial. *Id.* § 2.311(c); *see Nat. Res. Def. Council*, 823 F.3d at 643–44.

Invocation of the "the appropriate and available administrative procedure" described above, we have held, "is

the statutorily prescribed prerequisite for this court's jurisdiction to entertain [a] petition [to] review" a final NRC order described in 42 U.S.C. § 2239. *Gage v. U.S. Atomic Energy Comm'n*, 479 F.2d 1214, 1217 (D.C. Cir. 1973); *see also Nat. Res. Def. Council*, 823 F.3d at 643 ("To challenge the [NRC's] grant of a license renewal . . . a party must have successfully intervened in the proceeding by submitting adequate contentions under 10 C.F.R. § 2.309."). But the petitioners failed to request a hearing or submit contentions related to the amended license. Instead, they emailed a letter—which made no mention of a hearing—to the NRC staff. The "informal[] present[ation of] views" to the NRC by the petitioners, who "were neither unaware of the proposed [amendment] nor strangers to the [NRC] staff," is insufficient to satisfy the Hobbs Act's "party aggrieved" requirement. *Gage*, 479 F.2d at 1217 n.11.

That the petitioners raise NEPA objections to the NRC's issuance of the amended license does not change our thinking. NEPA does not give the petitioners an independent cause of action, *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 507 (D.C. Cir. 2010), so they rely on the Hobbs Act and the AEA to challenge the license amendment. They are thus obliged to comply with the hearing procedures set out therein. NEPA "does not, by its own terms or its intent, alter the Commission's hearing procedures." *Nat. Res. Def. Council*, 823 F.3d at 652 (quoting *Beyond Nuclear v. NRC*, 704 F.3d 12, 18–19 (1st Cir. 2013)). Any person seeking to intervene in "any proceeding" under the AEA "for the . . . amending of any license"—including those who object to the agency's discharge of its NEPA duties—must request a hearing or otherwise intervene in the proceeding as required by the AEA and its regulations. 42 U.S.C. § 2239(a)(1)(A); *see* 10 C.F.R. § 2.309. Indeed, the NRC's regulations expressly permit interested persons to raise NEPA contentions in their request for a

hearing. 10 C.F.R. § 2.309(f)(2) ("On issues arising under [NEPA], participants shall file contentions based on the applicant's environmental report."); *see also Union of Concerned Scientists v. NRC*, 920 F.2d 50, 56–57 (D.C. Cir. 1990).

Because the petitioners failed to properly intervene in the manner required by 42 U.S.C. § 2339 and the NRC's AEA regulations, they were not parties to the licensing amendment proceeding they now ask us to review. Accordingly, under the Hobbs Act, 28 U.S.C. § 2344, we dismiss their petition for review for lack of jurisdiction.

*It is so ordered.*