# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 11, 2023      Decided August 15, 2023

No. 21-1137

MATSON NAVIGATION COMPANY, INC.,
PETITIONER

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION;
MARITIME ADMINISTRATION,
RESPONDENTS

APL MARITIME, LTD. ET AL.,
INTERVENORS

———

Consolidated with 22-1150, 22-5212, 22-5224

———

On Petitions for Review of Orders of the U.S. Department of
Transportation and On Appeals from the United States
District Court for the District of Columbia
(No. 1:21-cv-01606)
(No. 1:22-cv-01975)

———

*Lucas C. Townsend* argued the cause for petitioner/appellant. With him on the briefs were *Rachel S. Brass*, *Joshua M. Wesneski*, and *Amalia E. Reiss.*

*Casen B. Ross*, Attorney, U.S. Department of Justice, argued the cause for respondents/appellees. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Charles W. Scarborough*, Attorney, *John E. Putnam*, General Counsel, U.S. Department of Transportation, *Paul M. Geier*, Assistant General Counsel for Litigation and Enforcement, *Joy K. Park*, Senior Trial Attorney, and *Joseph O. Click*, Trial Attorney, Maritime Administration.

*Brian T. Burgess* argued the cause for intervenors in support of respondents. With him on the brief was *Gerard J. Cedrone*.

Before: WILKINS, RAO and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RAO.

RAO, *Circuit Judge*: This case begins and ends with jurisdiction, which we lack under the Hobbs Act. The United States Maritime Administration ("MARAD") approved a shipping company's request to replace two vessels operating in the Pacific trade within the Maritime Security Program. Matson Navigation Co., a competitor in the Pacific, petitions for review of the replacements. As a source of jurisdiction, Matson points to the Hobbs Act, under which we have original jurisdiction over some acts of MARAD. But we have Hobbs Act jurisdiction only when a "party aggrieved" files a timely petition for review.

Matson was not a "party" to the replacement proceedings for either vessel, and we therefore deny the petitions for direct review. We also reverse two orders of the district court, consolidated with these petitions, that held jurisdiction over Matson's claims under the Administrative Procedure Act ("APA") was exclusive in the court of appeals. Because we

lack jurisdiction under the Hobbs Act, Matson's APA claims were appropriately brought to the district court in the first instance, and we remand for further proceedings.

I.

A.

Matson is an American shipping company that has been providing freight carrier services in the Pacific since 1882. Matson's vessels carry cargo from the West Coast of the United States to ports in Asia, Hawaii, Guam, and the Northern Mariana Islands, to name a few. One of Matson's competitors in the region is APL, a shipping company organized in Delaware and owned by a French corporation.

APL participates in the Maritime Security Program ("MSP"). The MSP provides annual payments to the owners of vessels that are made available for use "by the United States for national defense or military purposes in time of war or national emergency." 46 U.S.C. § 53102(b)(4)(A); *see also id.* § 53107. The purpose of the MSP is to "maintain a United States presence in international commercial shipping" that can be activated in a crisis. *Id.* § 53102(a). MARAD, an agency within the Department of Transportation, oversees the MSP by determining vessel eligibility, entering into operating agreements, and approving "replacement" vessels for the MSP fleet. *Id.* §§ 53102, 53103, 53105(f); *see also* 46 C.F.R. § 296.1.

MSP vessels must trade exclusively in foreign commerce with one important exception. Vessels approved before 2018[1]

---

[1] Congress tightened the requirements for MSP vessels engaging in domestic trade in the National Defense Authorization Act for 2018. Pub. L. No. 115-91, § 3503, 131 Stat. 1283, 1911 (2017). Except a

and "replacement" vessels may trade in "mixed" foreign and domestic trade with designated islands in the Pacific.[2] *See* 46 U.S.C. § 53105(a)(1)(A) (explaining MSP vessels must trade "exclusively in the foreign commerce or … in mixed foreign commerce and domestic trade allowed under a registry endorsement"); *id.* § 53105(a)(2) ("[I]n the case of a vessel, other than a replacement vessel …, first covered by an operating agreement after … 2018, the vessel shall not be operated in the transportation of cargo between points in the United States and its territories either directly or via a foreign port."). Because new vessels participating in the MSP cannot engage in trade with domestic islands in the Pacific, it is valuable for a new vessel to be approved as a "replacement."

MARAD, in conjunction with the Secretary of Defense, may approve the replacement of a vessel with another vessel eligible to be included in the MSP fleet. *Id.* § 53105(f). To be eligible for participation in the MSP, a vessel must be owned and operated by United States citizens as defined by section 50501. *Id.* § 53102(c)(1); *see also id.* § 50501 (defining entities "deemed citizens of the United States"). The vessel must be "self-propelled" and suitable for "national defense" purposes.

---

carveout for replacements, only vessels approved before the Act may engage in "mixed" domestic and foreign trade. *See* 46 U.S.C. § 53105(a).

[2] In the United States, domestic shipping is heavily regulated. For example, under the Jones Act, a vessel may not engage in the transportation of merchandise "between points in the United States to which the coastwise laws apply" unless several requirements are met. 46 U.S.C. § 55102(b). And the vessel must be "wholly owned by citizens of the United States," *id.* § 55102(b)(1), and "built in the United States," *id.* § 12112(a)(2)(A).

*Id.* § 53102(b)(3)–(4). And the vessel must provide "transportation in foreign commerce." *Id.* § 53102(b)(2).

Replacement approvals are handled informally between MARAD and the MSP contractor. Neither the statute nor the regulations provide for intervention by third parties in these proceedings. *See* 46 C.F.R. § 296.30; 46 U.S.C. § 53105(f).

B.

This case involves two replacement vessels. APL requested approval of the HERODOTE as a replacement for the GUAM, a vessel operating in the Pacific.[3] MARAD approved the replacement in 2021, and the HERODOTE began carrying cargo originating in the United States to Saipan. The agency does not ordinarily provide public notice that an MSP contractor has applied to replace one vessel with another, and so Matson was unaware of the proceedings. When it learned of the approval, Matson asked MARAD to provide the administrative record so Matson could contest the approval. MARAD refused.

Matson filed an APA challenge against MARAD in district court pursuant to 28 U.S.C. § 1331, arguing that approval of the HERODOTE was arbitrary, capricious, and contrary to law. At the same time, Matson also filed a petition for direct review in our court pursuant to the Hobbs Act. The district court dismissed the APA challenge, holding the Hobbs

[3] Matson previously contested the 2015 approval of the GUAM as a replacement vessel. Matson's challenge reached our court, and we dismissed for lack of jurisdiction under the Hobbs Act because Matson's petition was untimely. *Matson Navigation Co. v. DOT*, 895 F.3d 799, 801, 804 (D.C. Cir. 2018).

Act vested exclusive jurisdiction in the court of appeals, and Matson appealed.

In June 2022, MARAD approved the DAKAR to replace another APL vessel operating in the Pacifc, the AGATE. Because of litigation involving the SAIPAN, an earlier replacement for the AGATE,[4] MARAD informed Matson that APL was seeking to replace the SAIPAN with an unnamed vessel. MARAD initially provided no details to Matson about the replacement vessel, but invited Matson to submit comments. In its comments, Matson argued that MARAD had violated the Due Process Clause, the APA, and various regulations by not turning over more information about the replacement proceedings. Matson also maintained the new ship was an ineligible replacement under the MSP because it engaged in domestic trade and because the SAIPAN had been operating unlawfully. In total, Matson submitted 24 pages of comments and 38 exhibits. Matson also requested to intervene and fully participate in the proceedings.

In its order approving the DAKAR as a replacement vessel, MARAD responded to Matson's comments but rejected the request to intervene and fully participate. Matson filed suit again under the APA, in the district court pursuant to 28 U.S.C. § 1331 and in our court pursuant to the Hobbs Act. Matson

---

[4] Matson also contested approval of the SAIPAN as a replacement vessel in 2016. We dismissed Matson's challenge to the SAIPAN for lack of jurisdiction under the Hobbs Act because MARAD's order did not invoke section 50501. *Matson Navigation*, 895 F.3d at 805. The district court vacated approval of the SAIPAN and remanded the issue to MARAD. *Matson Navigation Co. v. DOT*, 471 F. Supp. 3d 60, 62–63 (D.D.C. 2020). APL eventually stopped seeking approval for the SAIPAN because its age made it ineligible for the MSP. *See* 46 U.S.C. § 53102(b)(3). The parties dispute whether the DAKAR is replacing the AGATE or the SAIPAN.

moved for a preliminary injunction, but the district court denied Matson's motion, holding the Hobbs Act granted the court of appeals exclusive jurisdiction. Matson filed an interlocutory appeal. We granted the parties' request to consolidate the four dockets regarding the DAKAR and HERODOTE: the two Hobbs Act petitions filed in this court, the interlocutory appeal from the denial of a preliminary injunction, and the appeal from a dismissal for lack of jurisdiction.

## II.

Matson petitions for direct review under the Hobbs Act, which provides a "party aggrieved by [a] final [agency] order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies." *Id.* § 2344. The Hobbs Act enumerates covered agency actions, which include "all rules, regulations, or final orders of … the Secretary of Transportation issued pursuant to section 50501." *Id.* § 2342(3). "Implementation of the [MSP] has been delegated by the Secretary of Transportation to [MARAD]." 46 C.F.R. § 296.1. Matson claims MARAD's approvals of the HERODOTE and the DAKAR were issued pursuant to section 50501, which defines "[e]ntities deemed citizens of the United States," one of the eligibility criteria for participation in the MSP. 46 U.S.C. § 50501; *see also id.* § 53102(c). We do not reach the merits of Matson's claim because Matson was not a "party aggrieved" by APL's replacement proceedings, and we lack jurisdiction under the Hobbs Act.

To determine whether a petitioner is a "party aggrieved" under the Hobbs Act, we apply "two successive steps." *Water Transp. Ass'n v. ICC*, 819 F.2d 1189, 1192 (D.C. Cir. 1987). First, a petitioner is "aggrieved" when the traditional analysis for Article III standing is satisfied—namely the petitioner "has suffered an injury in fact traceable to the [agency's] ruling and

redressable by a decision" of our court. *Id.* at 1193. Second, we consider whether the petitioner was a "part[y] to the underlying agency proceedings." *ACA Int'l v. FCC*, 885 F.3d 687, 711 (D.C. Cir. 2018). We "must read 'party' as referring to a party before the agency, not a party to the judicial proceeding." *Simmons v. ICC*, 716 F.2d 40, 43 (D.C. Cir. 1983). This reflects the "special judicial review provisions of the Hobbs Act," in which Congress specified a petitioner must be a "party aggrieved," rather than a "*person* aggrieved" as in the APA's judicial review provision enacted just four years earlier. *Id.* (emphasis added). Giving "meaning to that apparently intentional variation," a petitioner must acquire "party" status before the agency in order to invoke jurisdiction under the Hobbs Act. *Id.*

The prerequisites to being a "party" will depend in part on the nature of the agency proceedings because the Hobbs Act provides for review of a variety of agency actions, including "rules, regulations, [and] final orders." *See* 28 U.S.C. § 2342(3). We have said the level of participation necessary to be a "party" depends on the formality of the proceedings. *Ohio Nuclear-Free Network v. NRC*, 53 F.4th 236, 239 (D.C. Cir. 2022); *see also Simmons*, 716 F.2d at 43 (explaining that when agency proceedings are not "structured" so "at least some persons may acquire party status," there are "other means to assure, where appropriate," that an "order will be directly appealable" under the Hobbs Act). When intervention before the agency is required, review "will be denied to those who did not seek—or who sought but were denied—leave to intervene." *Ohio Nuclear-Free Network*, 53 F.4th at 239 (cleaned up). In informal proceedings, however, a petitioner may be considered a "party" after making a "full presentation of views" before the agency. *Water Transp. Ass'n*, 819 F.2d at 1193. "[D]e minimis participation is insufficient." *S. Pac. Transp. Co. v. ICC*, 69 F.3d 583, 587 (D.C. Cir. 1995) (cleaned up).

Even assuming that MARAD's orders approving the HERODOTE and the DAKAR were issued pursuant to section 50501 and that Matson was "aggrieved" as a competitor to APL's replacement vessels, Matson was not a "party" to the MARAD proceedings and therefore we lack jurisdiction over Matson's Hobbs Act petitions.

## A.

We first consider MARAD's order approving the HERODOTE as a replacement vessel under the MSP. "MARAD has always handled MSP participant requests for approval of a replacement vessel as informal matters between MARAD, in consultation with the [Department of Defense], and the MSP participant." Email from Joseph O. Click, Lead Attorney, Maritime Support Programs, to Mark A. Perry & Brian Burgess, Attorneys for Matson Navigation Co. (Sept. 1, 2021). MSP contractors send a request for approval to the Maritime Administrator. There is no formal mechanism for third parties to submit comments or intervene. Matson admits it did not participate, in any way, in the 2021 MARAD proceedings about whether the HERODOTE should be approved as a replacement vessel. Matson did not seek to intervene and did not otherwise present its views to the agency. In fact, Matson complains it was unaware the replacement proceedings were happening at all. After learning of the HERODOTE's approval, Matson requested the administrative record, but MARAD refused.

Because it was in the dark about the proceedings, Matson made no presentation of its views to the agency, much less the full presentation necessary to being a "party aggrieved." We therefore lack jurisdiction over Matson's Hobbs Act petition challenging MARAD's 2021 approval of the HERODOTE as a replacement vessel.

B.

With respect to the approval of the DAKAR as a replacement vessel, Matson managed some participation in the MARAD proceedings. In 2021, APL requested approval to replace the AGATE. Because Matson had successfully sued MARAD in district court for approving the SAIPAN as a replacement for the AGATE in 2016, and the court had "requested that MARAD keep Matson apprised of developments," the agency informed Matson about the replacement application. *See* Email from Joseph O. Click to Mark A. Perry & Brian Burgess. Although MARAD declined to provide Matson with detailed information about the replacement, because of "the unique circumstances" of the long-running lawsuit against MARAD over the AGATE, the agency invited Matson to "submit any comments with respect to the vessel application" within two weeks. *Id.* This was unusual for what is normally a bilateral process between the MSP contractor and the agency.

Matson submitted 24 pages of comments and 38 exhibits to MARAD. Matson maintained that the agency had violated the Due Process Clause, the APA, and MARAD's regulations by not allowing Matson to participate fully. Additionally, Matson argued, on the merits, that the new ship was ineligible under the MSP because it engaged in domestic trade and was ineligible as a replacement because the vessel being replaced had been operating unlawfully. Finally, Matson asked to "intervene" and "fully participate" in the proceedings. MARAD allowed APL to submit a response.

MARAD approved the DAKAR in May 2022, responding to Matson's comments and APL's response, but rejecting Matson's attempts to "intervene" and "fully participate" in the proceedings. MARAD stated that for "informal adjudications"

like the replacement proceedings, only "minimal procedural requirements" are necessary. According to MARAD, it had "provided Matson with a significant opportunity to appear before the agency and present its views," but allowing third parties to intervene would "convert the MSP vessel replacement process into an adversarial proceeding" and "only disrupt[] what has heretofore been an informal process that has operated smoothly and relatively expeditiously." Although MARAD rejected Matson's request to participate more fully, the agency responded to and rejected several of Matson's comments on the merits.[5]

Matson's limited participation in the DAKAR's approval did not make Matson a "party" to the agency proceedings for the purposes of the Hobbs Act. First, MARAD refused to turn the replacement approval process into a formal proceeding. Although MARAD permitted Matson to submit limited comments, the agency explicitly rejected Matson's request to intervene. And we have held that a petitioner is not a party when intervention is sought but denied. *Ohio Nuclear-Free Network*, 53 F.4th at 239. Intervention is the process by which a non-party *becomes* a party to a proceeding. *See generally Broidy Cap. Mgmt. LLC v. Muzin*, 61 F.4th 984, 990 (D.C. Cir. 2023) ("Parties to the record include the original parties and those who have become parties by intervention.") (cleaned up). Ordinarily, an individual denied intervention "is not a party." *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1328 (D.C. Cir. 2013) (cleaned up). Matson never became a "party" under the Hobbs Act because its request to intervene was denied. *Ohio Nuclear-Free Network*, 53 F.4th at 239. In fact, Matson

---

[5] MARAD disagreed with Matson's claims that the DAKAR's trade with Saipan rendered it ineligible under the MSP, that the DAKAR could not replace the AGATE because the AGATE was ineligible, that the DAKAR violated MARAD's "heel-to-toe" policy for replacement, and that the DAKAR was not commercially viable.

acknowledges that "MARAD refused to allow Matson to intervene and fully participate in the DAKAR proceedings." Reply Br. 5. Matson may separately claim MARAD's denial of intervention was unlawful, but it has not done so in the petition before this court.

Second, Matson did not make a "full presentation of views" before MARAD. In its comments, Matson argued the agency had acted unlawfully by denying the opportunity to "fully participate." Matson pointed out that it did not have the requisite information to present all its views, including "timely copies of any submissions, applications, correspondence, or other communications" to the agency. In addition, Matson was not provided with the "how, when[,] and why" of APL's decision to operate the DAKAR, or even the technical specifications of the vessel like "size, type, and age." In no way was the 2022 replacement proceeding an "adversarial" one. Rather, it was an administrative application process between APL and MARAD. Matson played a limited outside role and submitted comments within the narrow scope permitted by MARAD. Because Matson did not, and was not allowed to, fully present its views in the DAKAR proceedings, Matson was not a "party" within the meaning of the Hobbs Act.

While we have held that less formal participation may sometimes be sufficient for "party" status, those cases are distinguishable from the facts here. For example, in *Water Transportation Association*, the agency "did not call for formal intervention" and instead "solicited general protests." 819 F.2d at 1193. "Given the informality of th[e] proceeding," we found the petitioner participated fully by submitting a protest and therefore had "party status." *Id.* There, the petitioner had full access to information about the proceedings, and so was able to present a full protest to the agency's action. *Id.*; *see also ACA Int'l*, 885 F.3d at 711 (finding the petitioner had achieved party

status by commenting on another's request for a declaratory ruling from the agency because the petitioner had "expressed support" for the request and "address[ed] certain additional issues," similar to the process of "submitting comments … in the context of a rulemaking") (cleaned up).

By contrast, Matson tried to participate fully and was prevented from doing so. The agency action here was not a rulemaking in which a person could participate by submitting comments; nor did the agency provide information about the proceedings and allow third parties to make a general protest. As MARAD has explained, replacement proceedings under section 53105(f) have always been informal and bilateral, between the MSP Contractor and the agency, without adversarial participation or public comments. There is no process for intervention and no specific procedures the agency must follow. *See* 46 C.F.R. § 296.30 (explaining simply that the vessel owner can seek replacement). Here, Matson was able to make limited comments, with limited information about the proceeding, as a matter of administrative grace. Matson's participation was so limited, it argued the proceedings violated the APA and the Constitution. Accordingly, Matson was not a "party" before MARAD under the Hobbs Act and we lack jurisdiction to review Matson's petitions for review.

III.

Our lack of jurisdiction under the Hobbs Act also dispenses with Matson's two appeals from the district court. In Matson's challenges to the DAKAR and HERODOTE proceedings under the APA, the district court held that the court of appeals had exclusive jurisdiction under the Hobbs Act. Because this was error, we reverse and remand both cases to the district court to consider the merits of Matson's claims.

14

\* \* \*

Whether a case begins in district court or is eligible for direct review in our court is a policy decision that is for "Congress rather than us to determine." *Simmons*, 716 F.2d at 43. The important thing is clarity. As Matson's counsel stated at oral argument, the company is just "trying to get review." Because sending limited comments based on limited information to an informal agency proceeding does not confer "party" status under the Hobbs Act, that review starts in the district court.

We therefore dismiss the two petitions for review under the Hobbs Act; we reverse the district court's denial of a preliminary injunction in the challenge to the 2022 approval order; and we reverse the dismissal of the 2021 approval order. We remand to the district court for further proceedings consistent with this opinion.

*So ordered.*